COMMONWEALTH of Pennsylvania,
Appellee

v.

Theodore CHARNIK, III, Appellant

Janine H. Charnik, Appellee

v.

Theodore Charnik, III, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 13, 2006.
Filed April 3, 2007.

Karen Hassinger, Washington, for appellant.

John C. Pettit, Asst. Dist. Atty., Washington, for Com., appellee.

Janine H. Charnik, appellee, pro se.

BEFORE: MUSMANNO, KLEIN and POPOVICH, JJ.

OPINION BY KLEIN, J.:

¶ 1 In these consolidated appeals Theodore Charnik III challenges the trial court's April 24, 2006 order denying his petition to expunge his indirect criminal contempt convictions and the June 23, 2006 order denying his petition to expunge his record of the order entered against him under the Protection From Abuse Act (PFAA), 23 Pa.C.S.A. § 6101 *et seq.* The indirect criminal contempt convictions arose out of two violations of a Protection From Abuse (PFA) order.[1] Because section 9122(b) of the Criminal Code restricts expungement of *conviction* records to situations not applicable here, we find no abuse of discretion in the trial court's order denying the petition to expunge the indirect criminal contempt convictions. *see* Criminal History Record Information Act, 18 Pa.C.S.A. § 9122(b); *see also Commonwealth v. Rodland,* 871 A.2d 216 (Pa.Super.2005). With respect to expungement of his PFA record, Charnik presents a novel question. Neither the expungement statute nor the PFAA speaks to expungement of PFA records, and the case law does not address *final* PFA orders. Therefore, we must determine whether Charnik is entitled to expungement of his PFA record where a final PFA order has been entered, and, if so, whether a *Wexler*[2] balancing test is required.

¶ 2 We are guided by the Pennsylvania Supreme Court's decision in *Carlacci v. Mazaleski,* 568 Pa. 471, 798 A.2d 186, 190 (2002) and this Court's decision in *P.E.S. v. K.L.,* 720 A.2d 487 (Pa.Super.1998). Having considered these decisions, the expungement statute, and policy concerns, we conclude that Charnik is not entitled to expungement of his PFA record and therefore we need not address the *Wexler* issue. A PFA order, entered after a full hearing and supported by a fair preponderance of the evidence, which is not overturned on appeal, is more analogous to a conviction record than to a non-conviction record. Recognizing the logical appeal of Charnik's argument that allowing a *Wexler* balancing test where a final PFA order has been entered is a natural extension of *Carlacci,* we nonetheless conclude that extending that language is inappropriate in this case.

**Facts**

¶ 3 Janine H. Charnik (Wife) filed a PFA petition against Charnik on Novem-

---

1. No appellee brief has been filed.

2. *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877, 879 (1981).

ber 17, 2004. On December 14, 2004, following a hearing, Judge Mark E. Mascara granted Wife's petition and entered a final PFA order excluding Charnik from the marital residence. In February, 2005, Charnik moved back into the marital home, apparently with Wife's consent. On April 24, 2006, following an argument, Wife left the marital residence with the parties' 2½-year-old son. Wife received a call on her cell phone from Charnik indicating he had called in an Amber alert for his child. Wife contacted Officer Griffith of the East Washington Borough Police Department to report that her husband was trying to file an Amber alert. While on the phone with Wife, Officer Griffith received a call from the Pennsylvania State Police indicating that Charnik was at the state police barracks trying to get information on the whereabouts of his son. Charnik, who had partial custody of the child, had gone to the state police barracks in an attempt to locate his son, and had presented his PFA order and admitted to state police that he was residing at the address from which he was excluded by the PFA order. Charnik was arrested at that point for indirect criminal contempt.

¶ 4 At the hearing on the contempt petition, Charnik testified that he was invited back to the marital residence because the parties' child was sick and Wife needed help taking care of him. Wife admitted that the child was sick and she asked Charnik to take care of him because she had to work and she could not bring the child to daycare while he was sick. However, Wife also testified that she asked Charnik to leave, that she wanted things to work out but knew they never would, and she did not call police because she felt threatened. (N.T. Hearing on Petition for Indirect Criminal Contempt of PFA, 4/28/05, at 1–9). Charnik acknowledged he has anger management issues, but complied with the court's order and underwent anger management counseling.

¶ 5 The trial court stated on the record that despite the fact that the court found Wife was complicit in Charnik's moving back into the residence and did not find Wife credible in her testimony that she was afraid to call police, it was Charnik's responsibility to either not move back into the residence or to see that the PFA had been dropped. The court therefore found Charnick guilty of indirect criminal contempt and sentenced him to three months' probation.

¶ 6 On June 14, 2005, the parties were again before Judge Mascara for another charge of indirect criminal contempt for violation of the PFA order. Wife testified that when Charnik was returning their son to her residence, she saw him pull into the driveway and get out of the car in a rage, so she closed the door and locked it and went to find her phone. At that point, Wife testified, Charnik was at the back door with the child, he broke the chain lock on the door, pulled the molding out of the wall, grabbed Wife's phone and pulled the battery out of the phone. Wife ran out of the house and called for Charnik's grandmother, who was waiting in the car. Wife testified that Charnik screamed at his grandmother to get back into the car, and that they left. Wife called the police. (N.T. Hearing on Indirect Criminal Contempt Petition, 6/14/05, at 2–9).

¶ 7 Following the hearing, Judge Mascara again found Charnik guilty of indirect criminal contempt and sentenced him to a term of two to six months' incarceration, with work release, and ordered Charnik to continue anger management classes.

¶ 8 On July 22, 2005, Wife filed a petition to withdraw the PFA order. The trial court, on that date, entered an order setting aside the final PFA order that it had entered seven months prior.

¶ 9 Charnik filed a petition to expunge both the PFA record and the record of his

contempt convictions. Judge John F. DiSalle denied Charnik's petition to expunge the record of his contempt convictions and, thereafter, denied Charnik's petition to expunge the PFA record on which the indirect criminal contempt convictions were based. Charnik argues the court abused its discretion in denying the petitions to expunge the record of his criminal convictions and the PFA record. He also argues the court erred in not holding a hearing on the petition to expunge the PFA record.

## Discussion

### A. Conviction Records

¶ 10 Charnick claims the record of his indirect criminal contempt convictions should be expunged because the underlying PFA order was "withdrawn" by Wife. This is incorrect. A *petition* may be withdrawn; a final order, however, requires a judicial act to be set aside or vacated. Although the trial court entered an order setting aside the final PFA order, it had no jurisdiction to do so. *See* footnote 3, *infra.* Further, contempt proceedings are distinct from PFAA proceedings; PFAA proceedings are initiated in effort to stop perpetration of abuse and are civil in nature, while the indirect criminal contempt actions are *criminal* in nature and seek punishment for violation of a protective order. *See Commonwealth v. Nelson,* 456 Pa.Super. 349, 690 A.2d 728 (1997).

¶ 11 The trial court properly denied Charnik's petition to expunge his conviction records. There is a distinction between "conviction data" and "non-conviction data" for purposes of expungement. *Commonwealth v. Maxwell,* 737 A.2d 1243 (Pa.Super.1999). The Pennsylvania legislature has strictly regulated expungement of records of *convicted* persons. Conviction records may be expunged only where: 1) the subject of the information reaches the age of seventy and has been free from arrest or prosecution for ten years; or 2) where the individual has been dead for three years. Criminal History Record Information Act, 18 Pa.C.S.A. § 9122(b).

¶ 12 Here, Charnik is less than 70 years of age and has not been free of arrest or prosecution for ten years. The trial court's denial of his petition to expunge the indirect criminal contempt convictions was proper. 18 Pa.C.S.A. 9122(b); *Commonwealth v. Wolfe,* 749 A.2d 507 (Pa.Super.2000).

### B. Non–Conviction Records

¶ 13 With respect to the petition to expunge the PFA record, that issue is more complicated.[3] In *Commonwealth v. Wex-*

---

3. The PFA order entered on December 14, 2005 was a final order, from which no motion to reconsider or appeal was filed. The trial court, therefore, had no jurisdiction to set aside that order seven months later. *See* Pa.R.C.P.1901.7(b); Pa.R.C.P.1930.2(a); *see also* Pa.R.C.P.1901 *et seq.* (proceedings pursuant to the PFA are governed by the Rules of Civil Procedure). Once a final order or judgment is entered, an appeal must be filed within 30 days, or the trial court must expressly grant reconsideration within 30 days. If either of these two events does not occur, the judgment is final. Absent extraordinary cause, the order is not subject to collateral attack. *Witherspoon v. Wal–Mart Stores, Inc.,* 814 A.2d 1222 (Pa.Super.2002); Pa.R.A.P. 1701. Extraordinary cause, which would allow a trial court to act once a judgment had become final and appeal time has expired, generally refers to an oversight or act by a court or judicial process that operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the losing party. This did not occur here. A final PFA order was entered on December 14, 2004. The next docket entries are the two orders finding Charnik guilty of indirect criminal contempt, and then the July 22, 2005 order setting aside the PFA order. There is no intervening motion to reconsider or notice of appeal. Charnik makes no claim here that he had no notice of the final PFA order. We conclude, then, that the trial court had no authority to withdraw the PFA order.

*ler*, the Pennsylvania Supreme Court held, in a case of a petition to expunge an arrest record where the case was *nol prossed*, that if the Commonwealth does not bear its burden of proof beyond a reasonable doubt, or admits prior to trial that it is unable to bear its burden of proof, the Commonwealth must bear the burden of justifying why the arrest record should not be expunged. *Wexler*, 431 A.2d at 880. In determining whether the arrest record should be expunged, the Court approved a non-exhaustive list of factors: the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied. *Id.* at 879.

¶ 14 In *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997), the Court reiterated the *Wexler* balancing test "as a means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals." *Id.* at 772. The Court, reasoning that the law offers no greater absolution to an accused than acquittal of the charges, and that expungement of an arrest record, after being found not guilty, is not a matter of judicial clemency, stated: "All the factors listed in *Wexler*, and similar additional considerations, should be evaluated in expunction cases which are terminated without conviction for reasons such as nolle prosequi or ARD. *In cases of acquittal, however, we hold that a petitioner is automatically entitled to the expungement of his arrest record.*" *Id.* at 773 (emphasis added).

¶ 15 In *P.E.S. v. K.L.*, 720 A.2d 487 (Pa.Super.1998), this Court, noting that the Protection from Abuse Act did not provide for expungement, extended the concept of expungement to the PFAA in *limited circumstances* where a defendant seeks to protect his or her reputation. In *P.E.S.*, neither party appeared at the PFA hearing. At the dismissal proceeding, petitioner alleged the case was listed as "active," and the trial court noted that it did not believe it had the authority to expunge the PFA record. On appeal, this Court reversed, analogizing to a case expunging civil commitment proceedings where a petitioner was unlawfully committed to a state psychiatric hospital, *Wolfe v. Beal*, 477 Pa. 477, 384 A.2d 1187 (1978), and to a case expunging records of a psychiatric commitment where the commitment order was later determined to be null and void as having not been entered in compliance with the Due Process Clause of the United States Constitution and the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4406 (since repealed). *See Commonwealth v. J.T.*, 279 Pa.Super. 127, 420 A.2d 1064 (1980). We stated:

> Be they hospital records or court records, the dispositive fact is that they originated as a result of an illegal proceeding subsequently declared null and void; and, in either case, their "continued existence ⋯ pose a threat to appellant's reputation." *Id.* Under such circumstances, and in the absence of any compelling reason to the contrary offered by the Commonwealth, justice demands that appellant be returned to a position as near as possible as that which she enjoyed prior to the illegal commitment; namely, an unsullied record.

*P.E.S.*, 720 A.2d at 491 (quoting *J.T.*, 420 A.2d at 1065–66)(emphasis added).

¶ 16 Four years later, in *Carlacci v. Mazaleski*, 568 Pa. 471, 798 A.2d 186, 188 (2002), our Supreme Court stated: "In this Commonwealth, there exists the right to petition for expungement of a criminal ar-

rest record. This right is an adjunct of due process and is not dependent upon express statutory authority." *See* Pa. Const., Art. I, § 1.[4] The question before the Court was whether that right extended to the expungement of a PFA record based on a temporary PFA order. Adopting this Court's reasoning in *P.E.S.*, and holding that a petitioner has a right to seek expungement of a PFAA record where the petitioner seeks to protect his reputation, the *Carlacci* Court stated:

> [T]he Trial Court merely continued the original temporary order which was issued *ex parte*. **The Trial Court did not issue a permanent order or make any findings of fact that incidents of abuse had occurred.** The only evidence of abuse which existed of record when the Trial Court continued the temporary order was the Appellee's bald assertion of prior alleged acts of abuse that were contained in her petition, nothing more.

*Carlacci*, 798 A.2d at 191 (emphasis added).

¶ 17 The *Carlacci* Court found little distinction between the case before it and *P.E.S.* The instant case, however, differs significantly from both *P.E.S.* and *Carlacci*. In *P.E.S.* no action was taken on the PFA petition, and in *Carlacci* a temporary *ex parte* order was entered and thereafter dismissed pursuant to the parties' stipulation. Here, a hearing was held, the incidents of abuse were proven by a preponderance of the evidence, and a final order was entered. The Supreme Court's language in *Carlacci* is particularly instructive here and illustrates the critical distinction between the facts of *P.E.S.* and *Carlacci* and the facts in the case before us: "*In both cases* [*P.E.S.* and *Carlacci*], the PFAA proceedings were discontinued

before a hearing at which the plaintiff in each case would have had to met the burden of proving by a preponderance of the evidence that the allegation of abuse contained in the PFAA petitions had occurred." *Carlacci*, 798 A.2d at 190 (emphasis added).

¶ 18 The *Carlacci* Court went on to hold that the case was analogous to the facts of *P.E.S.* and *D.M.*, and therefore expungement was proper as a matter of law and the *Wexler* balancing test was unnecessary. *Carlacci*, 798 A.2d at 191. The *Carlacci* Court stated:

> We find the facts of *P.E.S.* and the instant case analogous to those presented in *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997). In *D.M.*, this Court held that when a defendant has been tried and acquitted of a criminal offense, he is entitled to expunction of the arrest record as a matter of law, and that the *Wexler* balancing test is unnecessary and inappropriate. Just as we found it "improper to go behind a verdict of acquittal and purport to assess the strength of the prosecution's case" in attempting to apply the first factor of the *Wexler* balancing test in a criminal expungement matter, *see D.M.*, 695 A.2d at 772, it is equally improper to assess the strength of a PFAA petition that has since been dismissed by court order before the plaintiff even attempted to meet its burden of proving the allegation of abuse contained in the PFAA petition, in attempting to apply the *Wexler* balancing test in a PFAA expungement matter.

*Id.* Thus, when a PFAA petition filed against a PFAA defendant has been dismissed by court order, as in *P.E.S.*, or the PFAA proceedings never evolve beyond

---

4. "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

the temporary order stage, as in *Carlacci*, expungement is proper as a matter of law. *Carlacci*, 798 A.2d at 191.

¶ 19 Charnik's argument acknowledges that the case law is not on point and that in his case an order was entered after a hearing. Charnik asks this Court to take the *P.E.S.* and *Carlacci* holdings one step further and find that, *like non-conviction records,* he is entitled to a *Wexler* balancing test on the petition to expunge the PFA record. He claims that this is the "next step" anticipated by *Carlacci.* Although we see the logic in this argument, we decline to extend the language in *Carlacci* until our legislature or our Supreme Court directs.

¶ 20 Charnik's argument presumes a constitutional entitlement to seek expungement, as recognized in *Carlacci. Carlacci* and *P.E.S.,* however, were based on records that existed where the PFA process was not completed and therefore without the safeguards of due process. That is not the case here. Thus, in order to reach the *Wexler* issue, we must first determine whether the language of *P.E.S.* and *Carlacci* can be expanded to include the right to expungement of PFA records where a final PFA order has been entered following a determination that the allegations of abuse were proven by a preponderance of the evidence. Because we read our Supreme Court's decision in *Carlacci* as expressly limiting the remedy of expungement of PFA records to those cases where records exist absent the safeguards of due process, that is, where no facts were brought forth to substantiate a finding of abuse and no final order was entered, *Carlacci*, 798 A.2d at 191, we decline to extend the language until the legislature or our Supreme Court directs.[5]

¶ 21 The expungement continuum ranges from (a) illegal or void civil commitments, acquittals in criminal cases, and PFA matters that have not been proven and brought to final order (such as *J.T., D.M., P.E.S.* and *Carlacci* ), where expungement is proper *as a matter of law,* to (b) non-conviction or arrest records, as in nol pros or ARD, where expungement is *a matter of judicial decision* (such as *Wexler* ), and to (c) conviction records, where there is no right of expungement except *by statutory authorization* in limited circumstances. The issue here does not fall squarely within the statutory language or the case law, but rather lies somewhere beyond *J.T., D.M., P.E.S.* and *Carlacci,* and between non-conviction and conviction records. Because a final order was entered here only after facts were brought forth proving the allegations of abuse by a fair preponderance of the evidence, and Charnik has not appealed that determination, we conclude that the record of a final PFA order is closer to a conviction record rather than a non-conviction record. Given this, our narrow reading of *Carlacci,* as well as the seriousness with which the legislature views protection from domestic violence and the associated drain on our judicial resources, we conclude that the petitioner is not entitled to seek expungement of his PFA record. *See Carlacci, supra; cf.* 23 Pa.C.S. § 6107(a) ("The court shall, at the time the defendant is given notice of the hearing [on the PFAA petition], advise the defendant of the right to be represented by counsel, and of the fact that *any protection order granted by a court may be considered in any subsequent proceedings under this title.*") (emphasis added).

5. We note that the dissenters in *Carlacci* would not allow expungement as a matter of law in the case of a temporary PFA, but would remand for a *Wexler* hearing even in cases of temporary PFA orders. Like the majority in *Carlacci,* we too question whether this would prove to be a proper use of limited judicial resources. 798 A.2d at 191 n. 10.

¶ 22 We note, too, that the facts of this case illustrate a typical sequence in an abusive relationship; the abuse, the remorse, the forgiveness, and the repetition of that cycle. Absent extraordinary cause, allowing a hearing to clear a record of abuse after a final order simply because the victim decided to forgive or "withdraw," would not only draft the judiciary into the psychological struggle, but would overwhelm its already limited resources. The fact remains that a final PFA order was entered after notice and hearing, and, in addition, there were two contempts of that order that resulted in convictions, which remain on Charnik's record. As the trial court indicated, it would be inappropriate, as well as fruitless, to expunge the PFA record when the criminal record would indicate indirect criminal contempt convictions stemming from violation of a PFA order.

## Conclusion

¶ 23 Because Charnik is not entitled to expungement of his record of his indirect criminal contempt convictions under 18 Pa. C.S.A. 9122(b), we affirm the order denying his petition to expunge his conviction records. Because there is no statutory authorization for expungement of PFA records, and because our Supreme Court has expressly limited the remedy of expungement of PFA records to those cases where the allegations of abuse have not been proven, we conclude that Charnik is not entitled to expungement of his PFA record. For these reasons, we affirm the trial court's orders denying expungement. We also direct the trial court to correct the record with respect to entry of the final PFA order.

¶ 24 Affirmed.