J-A07030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DWAYNE THOMPSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KRISTA ABRAM | |
| Appellee | No. 1231 WDA 2016 |

Appeal from the Order Entered July 12, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No: FD-003646-010

BEFORE: OLSON, STABILE, and STRASSBURGER, JJ.[*]

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 19, 2017**

Appellant, Dwayne Thompson, appeals *pro se* from the July 12, 2016 order denying his motion to modify an order entered against him under the Protection From Abuse Act ("PFA"). We affirm in part, vacate in part, remand for further proceedings, and deny Appellant's application for relief as moot.[1]

The parties have been engaged in a highly contentious child custody and support dispute since July of 2008. Appellee, Krista Abram, filed for

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We are in receipt of Appellant's April 11, 2017 application for an expedited decision. Appellant has requested expedited action from this Court, given the fact that the final PFA order expires in August of this year. Given our decision in this memorandum, we deny the application as moot.

support from Appellant in 2008 after genetic testing revealed Appellant was the father of the parties' child (the "Child"). The support action has been pending before Judge Kim Berkeley Clark of the Allegheny County Court of Common Pleas, Family Division. On July 23, 2014, Appellee filed a PFA petition on behalf of herself and the Child, alleging Appellant was physically and emotionally abusive to the Child and using and selling illegal drugs in the Child's presence. On August 12, 2014, Judge Kathryn Hens-Greco entered a three-year PFA order against Appellant prohibiting Appellant from seeing Appellee and the Child. Appellant did not file a timely appeal from the August 12, 2014 PFA order.

On September 6, 2014, Appellant filed a petition for special relief, before Judge Clark, requesting reconsideration of the final PFA order. Judge Berkeley Clark ordered Appellant to present the petition to Judge Hens-Greco. On June 3, 2015,[2] Appellant presented an emergency petition to vacate and expunge the final PFA order to Judge Hens-Greco. Judge Hens-Greco denied relief.

Presently at issue is Appellant's June 23, 2016 petition to modify the August 12, 2014 final PFA order. Also on June 23, 2016, Appellee filed a complaint against Appellant for indirect criminal contempt ("ICC") of a prior

_____

[2] In the interim, Appellant filed an emergency petition to vacate and expunge the PFA order before Judge Berkeley Clark. Judge Berkeley Clark denied relief.

court order. On July 12, 2016, Judge Clark denied Appellant's motion to modify the PFA order and dismissed Appellee's ICC complaint. The trial court denied Appellant's petition to hold Appellee in contempt. At Appellee's request, the trial court vacated a May 3, 2016 order which permitted Appellant to deliver a cell phone to Appellee's attorney to facilitate phone conversations between Appellant and the Child. Appellant filed this timely appeal, raising five assertions of error:

1. Whether the trial court erred when it heard, allowed[,] and granted [Appellee's] *pro se* motion to vacate [the May 3, 2016 order] when she is represented by counsel?

2. Whether the trial court erred when it heard, allowed[,] and granted [Appellee's] motion to vacate [the May 3, 2016 order] when she failed to appear for presentment of the motion, violated the order and then filed a *pro se* motion to vacate?

3. Whether the trial court erred when it denied [Appellant's] motion for contempt?

4. Whether the trial court erred when it denied [Appellant's] petition to modify [the August 12, 2014 final PFA order]?

5. Whether the trial court erred when it once again showed clear bias for [Appellee] and no concern for the best interest of the [Child]?

Appellant's Brief at 6.

We begin with a review of Appellant's fourth and fifth issues. Judge Clark reasoned that the coordinate jurisdiction rule prevented her from modifying Judge Hens-Greco's final PFA order. Trial Court Opinion, 10/28/16, at 9-10. We disagree. The trial court relied on **Commonwealth v. Charnik**, 921 A.2d 1214 (Pa. Super. 2007), wherein this Court noted that

a trial court cannot vacate a final PFA order after the appeal period expires. *Id.* at 1217 n.3. The trial court also cited the well-settled principle that "judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other." Trial Court Opinion, 10/29/16, (quoting **Okkerse v. Howe**, 556 A.2d 827 (Pa. 1989)).

We observe that the Domestic Relations Act permits the plaintiff or defendant in a PFA action to file a petition for modification at any time during the pendency of the PFA order. 23 Pa.C.S.A. § 6117(a). The trial court cited § 6117, but nonetheless refused to consider Appellant's modification because she "believed that this motion should have been presented before the [sic] Judge Hens-Greco." Trial Court Opinion, 10/28/16, at 10.

The trial court misapplied the coordinate jurisdiction rule. As is clear from the foregoing law, the propriety of Judge Hens-Greco's final PFA order is not at issue. Appellant did not file a timely appeal from that order, and it is not subject to collateral attack absent extraordinary circumstances not applicable here. Section 6117 permits modification of a final PFA order at any time during the pendency of the order. The merits of a modification petition do not call into question the propriety of the original order, as that order is no longer subject to attack. Rather, the propriety of modification presents a new issue. Therefore, the coordinate jurisdiction rule does not bar Judge Clark from hearing Appellant's modification petition. We vacate

Judge Clark's order insofar as it denied Appellant's modification petition and remand for a decision on the merits.

As to Appellant's remaining issues, we deny relief for the reasons explained in Judge Clark's October 28, 2016 opinion. We direct that a copy of that opinion be filed along with this memorandum.

Order affirmed in part and vacated in part. Application for relief denied as moot. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

DWAYNE THOMPSON,
Appellant,

vs.

KRISTA ABRAM,
Appellee.

FD: 08-003646-010

SUPERIOR COURT NO: 1231 WDA 2016

**OPINION**

FILED BY:

HONORABLE KIM BERKELEY CLARK

Copies Sent by 1st class mail to:

Dwayne Thompson, *pro se*
Appellant
1013 Coal Street
Wilkinsburg, PA 15221

Lauren Darbouze, Esquire
Counsel for Appellee, Krista Abram
Oxford Center—Suite 4300
301 Grant Street
Pittsburgh, PA 15219

FILED

16 OCT 28 PM 12: 40

DEPT OF COURT RECORDS
FAMILY DIVISION
ALLEGHENY COUNTY PA

ORIGINAL

(Exhibit D)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION-JUVENILE SECTION

---

DWAYNE THOMPSON,
    Appellant,

FD: 08-003646-010

vs.

SUPERIOR COURT NO: 1231 WDA.201

KRISTA ABRAM,
Appellee.

CLARK, J.

October 28, 2016

## OPINION

On July 8, 2016 Appellant, Dwayne Thompson, (hereinafter Father) presented a Motion for Contempt and a Petition to Modify Protection from Abuse Order that was entered by the Honorable Kathryn M. Hens-Greco on August 12, 2014. During the same hearing, Appellee, Krista Abram (hereinafter Mother) also presented a Petition for Special Relief requesting this court to vacate the order entered on May 3, 2016. After consideration of the motions and the arguments of both Father and Mother, I denied Father's Motion for Contempt and dismissed the Petition to Modify Protection from Abuse. As to Mother's Petition for Special Relief requesting that I vacate my order of court entered on May 3, 2016, I granted the petition and vacated the May 3, 2016 order of court.

Father appeals my order entered on July 8, 2016, in which I denied his Motion for Contempt, dismissed his Petition to Modify a Protection from Abuse Order and granted Mother's Motion to Vacate my Order entered on May 3, 2016.

---

1 | P a g e

# HISTORY

While the appeal in this case involves my Order of Court entered on July 8, 2016, it should be noted that this case involves a highly contested and contentious custody matter that was originally filed on May 5, 2010 and a Protection from Abuse Matter, including several Petitions for Indirect Criminal Contempt. The case history may be summarized as set forth below.

1. On July 17, 2008, Mother filed a complaint in support on behalf of the child. At the time that the complaint was filed, Father was residing in Georgia. After genetic testing established that he was the Father of the child, Father moved to Allegheny County, Pennsylvania.

2. On May 4, 2010, Father filed a complaint for shared custody of the child. The parties were directed to attend the Generations Education and Mediation Program with the goal of reaching an agreement.

3. On May 10, 2010, Father filed a petition for special relief, which was presented before me on May 20, 2010. On May 20, 2010, I ordered visitation for Father three times per week for three hours per visit, pending the entry of a final custody order.

4. On June 2, 2010, Father filed a petition to enforce the custody order (entered on May 20, 2010). On June 11, 2010, Mother filed an emergency petition for special relief. On June 11, 2010, I vacated the order entered on May 20, 2010 and I ordered that Father have supervised visitation at the Parental Stress Center under the Safe Families Program twice a week.

5. Mother and Father attended custody education and mediation but did not reach an agreement. A conciliation was held on August 9, 2010 and no agreement was reached. The matter was referred to the Partial Custody Hearing Officer, Laura Valles.

6. A custody hearing was held on September 30, 2010 before Hearing Officer Laura Valles. Hearing Office Valles issued a report and recommendation on October 12, 2010. Hearing Officer Valles recommended that Mother have primary physical custody of the child and that Father have partial custody of the child on a transitional schedule, which was to ultimately result in Father having partial custody of the child on alternating weekends from Friday at 6:00 P.M. through Sunday at 6:00 P.M. The recommendation also gave Mother and Father shared legal custody. Father was to complete a parenting program.

7. On November 1, 2010, Mother timely filed exceptions to the hearing Officer's report and recommendations. Mother filed a brief in support of her exceptions on December 16, 2010. Father filed a brief on February 9, 2011.

8. On February 10, 2011 after consideration of Mother's exceptions, the briefs and oral argument, I denied the exceptions and the recommendation of the Hearing Officer became a final order of court.

9. Subsequently, Father filed a petition for contempt claiming that Mother was not in compliance with the custody order. On May 4, 2012, Hearing Officer Valles found that Mother was in contempt of court. The Hearing Officer gave Father two weekends of additional custody time. Mother was ordered to strictly comply in order to purge the contempt.

10. Between May of 2012 and September of 2012, numerous motions and petitions were filed by both parties regarding custody of the child. Both parties have made allegations of abuse to the child, resulting in referrals to the Office of Children, Youth, and Families (CYF) for investigation. Abuse has never been substantiated.

11. Mother failed to comply with the custody order, which resulted in Father having no partial custody between May of 2012 and October of 2012.

12. On November 9, 2012, Father presented an emergency petition for special relief requesting the Mother be held in contempt of court for failure to comply with the custody order. The court ordered that the custody order(s) remain in effect and sent the matter to Hearing Officer Valles for a contempt hearing.

13. On January 17, 2013, Hearing Officer Valles found that Mother was in contempt of court and awarded Father ten additional weekends of custody time with the child. Mother was ordered to strictly comply with the provision of the order to purge herself of the contempt.

14. On or about February 4, 2013, Father filed a motion to modify the custody order. The parties were ordered to attend mediation on March 18, 2013. Mother failed to pay for her share of the mediation fees, so the mediation did not take place on March 18, 2013, as scheduled.

15. On February 8, 2013, Father presented a petition for special relief, enforcement and sanctions. I ordered that Father should continue to have partial custody as previously ordered and I imposed a sanction of $300.00 in counsel fees to counsel for Father.

16. Mother failed to comply with the custody order of court and on April 4, 2013, Father presented another emergency petition for special relief. I entered an order giving Father

primary physical custody of the child and Mother partial custody every weekend from Friday at 6:00 until Sunday at 6:00 P.M. on an interim basis.

17. On April 18, 2013, Mother presented an emergency motion for special relief. I dismissed her motion and the April 4, 2013 order remained in effect.

18. On April 29, 2013, Father obtained a temporary order for protection from abuse from Mother. On May 6, 2013, after a hearing I dismissed the PFA petition.

19. A custody conciliation was on July 2, 2013; no agreement was reached. Judicial conciliation was scheduled for August 22, 2013.

20. On July 8, 2013, Mother failed to comply with the custody exchange; the police were called to enforce the order. Mother was involved in an altercation with the police and was charged with aggravated assault, resisting arrest, interference with custody and related charges. On July 11, 2013, Father presented an emergency motion for special relief. I continued Father's interim primary physical custody and ordered that Mother have supervised partial custody twice per week. Mother subsequently pleaded guilty to the charges.

21. On December 13, 2013, after a two-day custody trial I awarded Mother and Father shared legal custody of the child and nearly shared physical custody of the child, with Mother having slightly more custodial time.

22. On July 23, 2014, Mother filed a Petition for protection From Abuse on behalf of herself and the child. The petition alleged that Father was using and selling drugs in the presence of the child and that he was physical and emotionally abusive to the child. A temporary PFA Order was entered and a final hearing was scheduled for July 30, 2014.

23. The July 30th hearing was continued until August 12, 2014.

24. On August 1, 2014, Mother filed a Complaint for Indirect Criminal Contempt (ICC) alleging that Father had violated the temporary PFA Order. The ICC was scheduled for August 13, 2014.

25. On August 12, 2014, after a hearing, the Honorable Kathryn Hens-Greco entered a three year PFA Order with the protected parties being Mother and the child. Judge Hens-Greco joined the ICC hearing with the PFA hearing also ruled that the ICC was founded. Temporary custody was awarded to Mother, with Judge Hens-Greco writing in the Order that Father "may file for modification of custody and the matter shall be set before Judge Kim Clark."

26. Father did not file an appeal as to the PFA Order of the ICC Order. Instead, Father presented a Petition for Special Relief before me on September 6, 2014. Father requested reconsideration of the PFA matter averring lack of credibility of the witnesses and that a witness did not have the opportunity to testify. As I was not the judge who presided over the PFA matter, I denied the Petition for Special Relief and ordered that the matter by presented before Judge Hens-Greco.

27. On May 14, 2015 Father presented an emergency motion to vacate and expunge the final PFA order entered on August 12, 2014 by Judge Hens-Greco before this court. I denied this motion.

28. On June 3, 2015, appellant presented his second emergency motion to vacate and expunge the final PFA order before Judge Hens-Greco. The motion was denied.

29. On October 9, 2015, Father represented his Petition before Judge Hens-Greco. The Petition was denied.

30. On December 18, 2015, Father presented a Petition for Special Relief. Father requested that he be permitted to deliver a Christmas present to his daughter and have telephone contact with her and to receive information about her education. Mother consented to this, and I entered an order granting Father's requested relief.

31. Since December 18, 2015, both Mother and Father have presented multiple petitions and motions before this court. As of September 16, 2016, the case has generated at least one hundred sixty-two docket entries.

32. On May 3, 2016, Father appeared before the court and presented an Emergency Motion for Special Relief. Neither Mother nor her attorney appeared for presentation of the motion. During his presentation, Father requested that he be able to have telephone contact with his daughter as was previously ordered. Father requested that I enter an order directing Mother to make arrangements for the child to call him every morning before school and every evening after school. I granted Father's motion and ordered the morning and evening telephone calls between Father and his daughter. I also ordered Father to provide a cell phone to Mother's attorney, who would then release the cell phone to Mother in order to facilitate the telephone contact.

33. On June 23, 2016, Mother filed another ICC against Father.

34. On June 23, 2016, Father presented a Motion to Modify the PFA Order and a Motion for Contempt. Mother presented a Petition for Special Relief. I scheduled a hearing on the matters for July 8, 2016. I also ordered that the indirect criminal complaint filed by Krista Abram against appellant on June 23, 2016 to be scheduled (if possible) on July 8, 2016 as

well. At the conclusion of the hearing, appellant was arrested for the indirect criminal complaint.

35. On July 7, 2016 appellant filed a Response and Opposition to Indirect Criminal Contempt.

36. On July 8, 2016, Mother, *pro se*, requested that I vacate the Order entered on May 3, 2016, which granted Father permission to deliver a telephone to her through her attorney. Mother also requested that the child not be forced to make telephone calls to Father. Father requested modification of the August 12, 2014 PFA order and that I hold Mother in contempt for failure to comply with the Order entered on May 3, 2016. A hearing on the ICC was also held. After a hearing in open court, I dismissed the ICC. I also denied Father's motion for contempt and dismissed the petition to modify the protection from abuse order. I granted Mother's petition and vacated the May 3, 2016 order of court.

37. On August 8, 2016, appellant filed a notice of appeal of the order entered on July 8, 2016. Appellant timely filed a concise statement of matters complained of on appeal on August 22, 2016.

## MATTERS COMPLAINED OF ON APPEAL

Father raises five issues on appeal. In his first assignment of error, Father asserts that I erred when I heard, allowed, and granted Mother's *pro se* Motion to Vacate (Petition for Special Relief) when she was represented by counsel.

Next, Father states that I erred when I heard, allowed, and granted Mother's *pro se* Motion to Vacate when she failed to appear for the presentation of the motion, violated the order, and then filed a *pro se* Motion to Vacate. (Petition for Special Relief)

In his third matter raised, Father contends that I erred when I denied his Motion for Contempt.

Father avers in his fourth matter complained of on appeal that I erred when I denied his Petition to Modify the Protection from Abuse Order.

Finally, Father contends that I erred when I showed clear bias for Mother and no concern for the best interest of the child.

## DISCUSSION

Father asserts that I erred when I heard, allowed, and granted Mother's *pro se* Motion to Vacate (Petition for Special Relief) when she was represented by counsel. I disagree.

On June 23, 2016, Father filed a "Response and Opposition to Indirect Criminal Contempt" in which he raised the same issue. In support of this position, Father attached to his response as an Exhibit, language from the Court Manual for the Adult Section of the Family Division of the Allegheny County Court of Common Pleas. Section One, subsection (L) (e) Entry of Appearance in Family Division Cases states that:

> "No *pro se* motions will be accepted involving a cause of action in which a litigant is represented by counsel. Representation in a particular cause of action will be determined on the basis of the *praecipe* for appearance filed by the attorney."

Father also attached to his response, as Exhibit "d", a copy of the Praecipe for Appearance as counsel in all matters for Krista Abram filed by Lauren Darbouze, Esquire on May 2, 2013. While appellant accurately reproduces the language of Section One (L) (e) of the Court Manual for the Adult Section of the Family Division, I determined that his reliance on this local rule to raise this particular issue on appeal is misplaced.

> "A defendant has the constitutional right to proceed without counsel if the decision to do so is knowing and voluntary. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), *accord, Commonwealth v. Davis*, 479 Pa. 274, 388 A.2d 324 (1978). However, the same constitutional right does not apply to a defendant like the Appellant, who was represented by counsel but also wanted to be his own co-counsel. *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993). This court's Opinion in *Ellis* reiterated the following policy reasons stated by the Superior Court concerning why that court will not review *pro se* briefs when an appellant is represented by counsel:

1. permitting the *pro se* brief may involve a conflict between lawyer and client, and this conflict could undermine appellant's chance of success;

2. counsel is obligated to submit to the appellate court only those issues which he believes to possess merit;

3. under no other circumstances are counsel and client permitted to present opposing arguments, as may well happen if both are permitted to submit briefs; and

4. reviewing *pro se* briefs of counseled appellants would lead to procedural confusion and delay in the appellate process because of the need for the court and the Commonwealth to review and evaluate additional *pro se* briefs. *Ellis*, 534 Pa. at 179–180, 626 A.2d at 1138–1139.

This Court held in *Ellis* that a defendant in a criminal case may not confuse and overburden the courts by filing his own *pro se* briefs at the same time his counsel is filing briefs for him. *Id.* There is no right to that type of hybrid representation at trial or on appeal, and the decision whether to allow such hybrid representation is within the sound discretion of the trial court. *Id.* (Emphasis added.)

This Court further explained the *Ellis* decision in *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994), in which we held that the Superior Court may prohibit the filing of *pro se* briefs by appellants represented by counsel on appeal. In *Rogers*, our decision stated that we may require that appellants remain with counsel through the appeal once counsel has filed a brief because to do otherwise would result in the confusion and overburdening of the court described in *Ellis*.

While the above cases reference criminal proceedings, the rulings are applicable in this case.

Even if I had refused to allow to Mother to present a *pro se* motion, she would still have had the opportunity to testify and be heard. In the course of hearing from Father on his Motion for Contempt, Mother could have asked for the same relief in stating her position as to Father's Motion. Given the testimony offered at the hearing (as well as the history of this case), I would likely have reached the same conclusion. The reason that I vacated the May 3, 2016 order was that the May 3, 2016 was entered because Mother failed to comply with the December 16, 2015 Order which permitted Father to have telephone contact with his daughter, receive information about her education, and deliver a Christmas gift to her. I would not have entered such an order

without Mother's consent due to the existing PFA. It was clear the at the July 8, 2016 hearing, Mother was no longer consenting. Accordingly, even if I erred in allowing Mother to proceed *pro se*, the error was harmless.

In his second matter complained of on appeal, appellant states that I erred when I heard, allowed and granted defendant's pro se Motion to Vacate when defendant failed to appear for the presentation of the motion, violated the order, and then filed a *pro se* Motion to Vacate. Whether Mother appeared on May 3, 2016 is irrelevant. In the course of the presentation of Father's Motion for Contempt and Motion to Modify the PFA Order, Mother would have had the right to be heard and to present her position. For the reasons set forth as to Father's first matter raised on appeal, this argument fails.

In the third matter complained of on appeal, Father contends that I erred when I denied his Motion for Contempt. Although I found that Mother did not comply with the orders entered on December 16, 2015 and May 3, 2016, as stated above, those orders were entered because Mother consented to the contact. In light of the three year PFA Order entered after a hearing in which the Petition alleged abuse of the child, I felt that I could not compel Mother to force the child to have contact with Father.

Father raises as his fourth matter complained of on appeal that I erred when I denied his Petition to Modify Protection from Abuse Order. In his last assignment of error, Father avers that I erred when I showed clear bias for Ms. Abram and no concern for the best interest of the child. I will discuss these two matters together.

In *Commonwealth v. Charnik*, our Superior Court held that:

"After a final protection order is entered, and no motion to reconsider or appeal is filed, the court no longer retains jurisdiction to vacate that order. *Charnik*, 921 A.2d 1214, at 1217, (2007). The court does, however, have jurisdiction to modify a protection from abuse order at any time after the filing of a petition for modification, service of the petition and a hearing on the petition. 23 Pa.C.S. § 6117.

It is a well-recognized principle that "... judges of coordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other." *Okkerse v. Howe*, 521 Pa. 509, 556 A.2d 827, 831 (1989).

23 Pa.C.S.A. 6108(a) provides that "the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor child. (Emphasis added.)

It appears that Father fails to comprehend the significance and implications of a final PFA order and the principle of coordinate jurisdictions. On May 14, 2015 appellant presented an emergency motion to vacate and expunge the final PFA order entered on August 12, 2014 by Judge Hens-Greco. Following the principle of coordinate jurisdiction, I denied appellant's motion and directed appellant to present his motion before Judge Hens-Greco. On June 3, 2015, Father presented his second emergency motion to vacate and expunge the final PFA order before Judge Hens-Greco. The motion was denied.

On July 8, 2016, Father presented a Petition to Modify Protection from Abuse. I denied this motion because I believed that this motion should have been presented before the Judge Hens- Greco. Additionally, Mother has vehemently objected to any changes in the current PFA order.

As to the issue of bias towards Mother, the record is clear that all decisions made in this case were based upon the law. The law in this case favors Mother. It is also clear, that I have compassion for Father. As I stated at the conclusion of the July 8, 2016 hearing:

With respect to Mr. Thompson's petition to modify the protection from abuse order, unfortunately, it is the position of this Court that I am unable to modify the PFA because I was not the Judge who presided over that hearing. I did not make the determinations as to credibility of witnesses and so forth... As much as I feel that Mr. Thompson should be having contact with his daughter, there is a PFA, and the only contact that can happen is with the consent of Ms. Abram. (*See* pages 66 and 67 of the transcript of the July 8, 2016 hearing.)

## CONCLUSION

Based upon the foregoing, no reversible error occurred and my findings and rulings should be left undisturbed.

By the Court

_____, J.

Kim Berkeley Clark