J-S72015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER CLIFFORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVE MEHALSHICK | : | |
| | : | |
| Appellant | : | No. 1933 MDA 2017 |

Appeal from the Order Entered November 15, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
8418-c OF 2006

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 21, 2019**

Dave Mehalshick appeals from the order denying his motion to expunge his Protection From Abuse Act ("PFAA")[1] record.  We affirm.

On August 8, 2006, Heather Clifford filed a petition for protection from abuse ("PFA") against Appellant, her ex-boyfriend, and was granted a temporary PFA order.  At a hearing conducted on August 15, 2006,[2] the parties agreed to the entry of a final PFA order to be effective for one year.  Pursuant to that order, Appellant agreed, without admission of wrongdoing, to be bound to the following terms:

> [Appellant] is directed to refrain from causing or attempting
> to cause physical injury to [Ms. Clifford,] from placing [Ms.

---

[1] 23 Pa.C.S. § 6101, *et seq*.

[2] Pursuant to the PFAA, once a petition is filed, a hearing shall be held within ten days.  **P.E.S. v. K.L.**, 720 A.2d 487, 489 (Pa.Super. 1998).

Clifford] in fear of bodily injury[,] from harassing and/or stalking [Ms. Clifford];

[Appellant] is prohibited from having personal contact, telephone contact[,] or any other contact with [Ms. Clifford,] and from entering the place of employment, business or school of [Ms. Clifford].

PFA Order, 8/15/06, at 1. The final PFA order expired on August 15, 2007.

In May of 2007, while the final PFA order was still in effect, Appellant was arrested for violating its terms, and charged with indirect criminal contempt ("ICC") for violation of that order. Pursuant to the affidavit supporting the ICC complaint, Appellant continued to attempt to make contact with Ms. Clifford through repeated phone calls, even after she had changed her cell phone number four times. Appellant also attempted to make contact with Ms. Clifford at her friend's residence. Following a hearing, Appellant was found guilty of ICC by violating the final PFA order, and was sentenced to ninety days of probation, ordered to attend anger management classes, and ordered to abide by probation conditions.

In August of 2017, Appellant filed a motion to expunge the above PFAA record. Following a hearing on October 10, 2017, the trial court denied his motion. An order to that effect was entered on November 14, 2017. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

He raises the following issues for our review:

1. Whether the lower court committed a manifest error of law or otherwise abused its discretion in failing to apply the holdings

of the Pennsylvania Supreme Court as set forth in ***Carlacci v. Mazaleski***, . . . 798 A.2d 186 ([Pa.Super.] 2002) to Appellant's motion for expungement of docket record.

2. Whether the lower court committed a manifest error of law or otherwise abused its discretion in applying the holdings of the Pennsylvania Superior Court as set forth in ***Commonwealth v. Charnik***, . . . 921 A.2d 1214 [(Pa.Super.] 2007) to Appellant's motion for expungement of docket record.

3. Whether the lower court committed a manifest error of law or otherwise abused its discretion in summarily denying Appellant's motion for expungement of docket record without first affording him an opportunity to introduce evidence, provide testimony or create any record whatsoever in support of said motion.

4. Whether the lower court committed a manifest error of law or otherwise abused its discretion in refusing to apply the "***Wexler***" balancing test, as set forth in ***Commonwealth v. Wexler***, 431 A.2d 877 (Pa. 1981)[,] and made applicable to the expungement of protection from abuse orders in ***Carlacci***, to Appellant's motion for expungement of docket record.

Brief for Appellant at 6 (unnecessary capitalization omitted).[3]

Our standard of review for appeals from expungement determinations is well settled:

The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion.

---

[3] As Appellant's issues are interrelated, we will address them together.

***Commonwealth v. Rodland***, 871 A.2d 216, 218 (Pa.Super. 2005) (citing

***Commonwealth v. Lutz***, 788 A.2d 993, 996 (Pa.Super. 2001)).[4]

Our Court has long recognized that the Commonwealth's retention of an arrest record, in and of itself, may cause serious harm to an individual. ***See***

***Commonwealth v. Malone***, 366 A.2d 584, 588 (Pa.Super. 1976) (noting possible effects of maintaining an arrest record, including economic and non-economic losses and injury to reputation). Accordingly, "[i]n this Commonwealth, there exists the right to petition for expungement of a criminal arrest record. This right is an adjunct of due process and is not dependent upon express statutory authority." ***Carlacci***, ***supra*** at 188.[5]

In ***Wexler***, the seminal case on expungement hearings in the Commonwealth, our Supreme Court defined the responsibilities of a court as it decides whether to expunge an arrest record: "In determining whether justice requires expungement, the court, in each particular case, must balance the individual's right to be free from the harm attendant to maintenance of

---

[4] In claiming that the trial court "committed a manifest error of law," Appellant misapprehends our standard of review. The trial court's decision to grant or deny expungement is an act of judicial discretion. ***See Commonwealth v. Lutz***, 788 A.2d 993, 996 (Pa.Super. 2001). Accordingly, we review the decision of the trial court for an abuse of discretion, not an error of law. ***Id***.

[5] In ***Carlacci***, Carlacci filed a PFAA petition against Mazaleski. The trial court entered a temporary PFA order, and scheduled a hearing to determine whether a final PFA order was warranted. The parties agreed to continue the hearing, and ultimately executed a stipulation that the temporary PFA order should be declared null and void, *ab initio*. The stipulation was adopted as an order of court. Mazaleski thereafter filed a motion to expunge the PFAA record.

the arrest record against the Commonwealth's interest in preserving such records." **Wexler**, **supra** at 879. The **Wexler** Court determined that, in non-conviction situations where the Commonwealth is unable to carry its burden of proof or decides to withdraw or *nolle prosequi* the charges, the burden shifts to the Commonwealth to present compelling evidence to justify retention of such a record. **Id**. at 880; **see also Lutz**, **supra** at 999. To aid courts in applying the balancing test for expungement, the **Wexler** Court adopted the following non-exhaustive list of factors that the court should consider:

> [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

**Wexler**, **supra** at 879 (citation omitted).[6] The mere assertion of a general interest in maintaining accurate records of those accused of crime is not compelling. **Id**. at 881. Moreover, when a petitioner has been tried and acquitted, the **Wexler** balancing test is inappropriate, and the petitioner is

---

[6] In **Wexler**, the appellant-parents were arrested and each charged with corruption of a minor and criminal conspiracy. Several months later, the Commonwealth filed a petition for *nolle prosequi* of the charges against them, and the petition was granted.

entitled to expunction of the record as a matter of law. *See Commonwealth v. D.M.*, 695 A.2d 770, 772 (Pa. 1997).[7]

The right to petition for expungement has been extended to the PFAA in limited circumstances where a petitioner seeks to protect his or her reputation. *See P.E.S. v. K.L.*, 720 A.2d 487 (Pa.Super. 1998).[8] Generally, in ruling on a petition to expunge a PFAA record, the trial court must utilize the *Wexler* balancing test.[9] *P.E.S.*, *supra* at 492. However, in certain circumstances, a *Wexler* balancing test is unnecessary, depending on the nature and extent of the PFAA proceedings. *Carlacci*, *supra* at 191 ("[T]he *Wexler* balancing is unnecessary when: (1) a PFAA petition filed against a PFAA defendant has been dismissed by court order, as in *P.E.S.*; or (2) the PFAA proceedings never evolve beyond the temporary order stage."); *see also Commonwealth v.*

---

[7] In *D.M.*, the petitioner was arrested, charged, and tried for indecent assault and corrupting the morals of a minor, but was acquitted in a non-jury trial. Petitioner subsequently filed a petition to expunge his record.

[8] In *P.E.S.*, a request for a temporary PFA order against K.L. was denied. A hearing on the petition was scheduled to take place a few days later; however, the parties failed to appear, and no further action was taken on the petition. Nevertheless, a court record was created, and the case was designated as "active" in the court computer system. K.L. sought expungement of the court record.

[9] In so ruling, the *P.E.S.* Court did not specifically cite *Wexler*; however, it cited *Commonwealth v. Butler*, 672 A.2d 806, 808-09 (Pa.Super. 1996), wherein this Court ruled that when faced with a request for expungement of a criminal record, the court must conduct a *Wexler* balancing test.

*Charnik*, 921 A.2d 1214, 1219 (Pa.Super. 2007). As we explained in

*Charnik*,

> The expungement continuum ranges from (a) illegal or void civil commitments, acquittals in criminal cases, and PFA matters that have not been proven and brought to final order (such as . . . **D.M., P.E.S.** and **Carlacci**), where expungement is proper *as a matter of law*, to (b) non-conviction or arrest records, as in *nol pros* or ARD, where expungement is *a matter of judicial decision* (such as **Wexler**), and to (c) conviction records, where there is no right of expungement except *by statutory authorization* in limited circumstances.

*Id*. at 1219 (emphasis in original).

In **Charnik**, a PFAA petition was filed against Charnik. Following a hearing, the trial court granted the petition and entered a final PFA order. Charnick twice violated the terms of the final PFA order, and was found guilty of two counts of ICC. He thereafter filed a petition to expunge the PFAA record, including the ICC convictions, which the trial court denied. On appeal, this Court drew a distinction between Charnik's ICC convictions and his PFAA record, noting:

> contempt proceedings are distinct from PFAA proceedings; PFAA proceedings are initiated in effort to stop perpetration of abuse and are civil in nature, while the indirect criminal contempt actions are *criminal* in nature and seek punishment for violation of a protective order.

*Id*. at 1217 (emphasis in original). The Court further explained distinction between "conviction data" and "non-conviction data" for purposes of expungement:

> The Pennsylvania legislature has strictly regulated expungement of records of convicted persons. Conviction records may be

expunged only where: 1) the subject of the information reaches the age of seventy and has been free from arrest or prosecution for ten years; or 2) where the individual has been dead for three years.

*Id*. (citing 18 Pa.C.S. § 9122(b)).[10]  Because Charnick did not meet the statutory requirements for expungement of his ICC convictions under § 9122(b), we affirmed the trial court's denial of his petition to expunge those convictions.  *Id*.

As to the question of whether Charnik was entitled to expungement of the remainder of the PFAA record, the *Charnik* Court found compelling that a final PFA order had been entered in the case after a hearing.  On this basis, the Court ruled that Charnik was not entitled to a *Wexler* hearing or expungement of the PFAA record, explaining as follows:

_____

[10] Pursuant to § 9122(b), criminal history record information may be expunged when:

> **(1)** An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision.
>
> **(2)** An individual who is the subject of the information has been dead for three years.
>
> **(3)**
>> **(i)** An individual who is the subject of the information petitions the court for the expungement of a summary offense and has been free of arrest or prosecution for five years following the conviction for that offense.
>>
>> **(ii)** Expungement under this paragraph shall only be permitted for a conviction of a summary offense.

18 Pa.C.S. § 9122(b).

- 8 -

> Charnik's argument presumes a constitutional entitlement to seek expungement, as recognized in **Carlacci**. **Carlacci** and **P.E.S.**, however, were based on records that existed where the PFA process was not completed and therefore without the safeguards of due process. That is not the case here. Thus, in order to reach the **Wexler** issue, we must first determine whether the language of **P.E.S.** and **Carlacci** can be expanded to include the right to expungement of PFA records where a final PFA order has been entered following a determination that the allegations of abuse were proven by a preponderance of the evidence. Because we read our Supreme Court's decision in **Carlacci** as expressly limiting the remedy of expungement of PFA records to those cases where records exist absent the safeguards of due process, that is, where no facts were brought forth to substantiate a finding of abuse and no final order was entered, **Carlacci**, 798 A.2d at 191, we decline to extend the language until the legislature or our Supreme Court directs.

**Charnik**, **supra** at 1220.

While acknowledging that the particular circumstances of the case "did not fall squarely within the statutory language or the case law, but rather lies somewhere beyond . . . **D.M.**, **P.E.S.** and **Carlacci**, and between non-conviction and conviction records," the **Charnik** Court reasoned that "the record of a final PFA order is closer to a conviction record rather than a non-conviction record" because "a final order was entered here only after facts were brought forth proving the allegations of abuse by a fair preponderance of the evidence, and Charnik has not appealed that determination." **Id**. Given its narrow reading of **Carlacci**, as well as the seriousness with which the legislature views protection from domestic violence and the associated drain on our judicial resources, the **Charnik** Court concluded that Charnik was not entitled to seek expungement of his PFA record. **Id**.

Turning first to Appellant's ICC conviction in the instant matter, we observe that he does not reference § 9122(b) in his brief, nor present any argument as to why his ICC conviction satisfies the criteria for expungement set forth in § 9122(b). In its opinion, the trial court ruled that Appellant had not met the requirements for expungement of his ICC conviction under § 9122(b). Trial Court Opinion, 6/29/18, at 9. As we discern no abuse of discretion, we affirm the trial court's order denying expungement as it relates to the ICC conviction.

Turning to the remainder of the PFAA record, Appellant contends that he filed his motion to expunge his PFAA record in the hopes of protecting his personal and professional reputation from the ongoing damage of having such record publicly accessible. He claims that the trial court refused him any meaningful opportunity to present evidence in support of expungement of his PFAA record. Appellant concedes that he is not entitled to expungement as a matter of law, but claims that, pursuant to **Carlacci**, he was entitled to a full hearing and a balancing of the **Wexler** factors to determine whether his motion should have been granted. Appellant further asserts that the trial court abused its discretion by relying on **Charnik**, which he maintains is inapplicable to this matter. Although Appellant acknowledges that a final PFA order was entered against him, he claims that it "was not the subject of a hearing, was not subject to findings of fact, was not subject to a determination that the allegations had been proven by a fair preponderance of the evidence,

and was, instead, the product of an agreement made without admission of wrongdoing." Appellant's brief at 14. Under this reasoning, Appellant maintains that his PFAA record is not "closer to a conviction record than a non-conviction record," such that the trial court's reliance on **Charnik** was inappropriate.

We disagree with Appellant's reasoning. As noted by the Court in **Charnik**, a **Wexler** hearing is reserved for those petitions for expungement which are "based on records that existed where the PFA process was **not** completed and therefore without the safeguards of due process." **Charnik**, **supra** at 1220 (emphasis added). As explained by the trial court herein: "[Appellant] was present, afforded his due process rights, and agreed to a PFA. He signed the PFA order which further validates his presence and ability to participate in the [PFAA] hearing." Trial Court Opinion, 6/29/18, at 4.

We have a narrow standard of review of the trial court's decision herein. **See Rodland**, **supra**. In the instant matter, the PFA process was completed, and a final PFA order was entered, with Appellant's consent. On this record, we cannot conclude that the trial court abused its discretion in entering an order denying expungement of the PFAA record. Hence, we are compelled to affirm its order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2019