J-S02014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TANYA A. MANNING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SETH J. MANNING | : | |
| | : | |
| Appellant | : | No. 1164 MDA 2022 |

Appeal from the Order Entered August 9, 2022
In the Court of Common Pleas of York County
Civil Division at No(s): 2019-FC-000166-12

BEFORE: PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED FEBRUARY 15, 2023**

Seth J. Manning ("Father") appeals from the August 9, 2022 order, in the York County Court of Common Pleas, granting in part and denying in part his petition to terminate/modify a final Protection from Abuse ("PFA") order. After review, we affirm.

On October 15, 2021, Tanya A. Manning ("Mother") filed a PFA petition against Father on behalf of herself and her two sons shared with Father. Subsequent to entry of a temporary protection order, the court held a hearing on November 8, 2021, November 12, 2021, and December 3, 2021.

> Based on the testimony presented during the November 8, 12, and December 3, 2021[] hearing, the trial court found that [Father] committed abusive conduct towards [Mother and] granted her request for a final PFA against [Father].[1]  It was

---

[1] The court entered a final PFA order on December 3, 2021. **See** Final PFA Order, 12/3/21. The court declined to include the parties' two children as protected parties. **See** N.T., 12/3/21, at 45-48.

established through testimony that [Mother] has a significant allergy to citrus that causes an anaphylactic reaction when she is exposed, including: throat closing, shortness of breath, wheezing in her lungs, vomiting, swelling, and poor circulation. It was further established that [Father] was aware of [Mother]'s allergy and had even been to the hospital with her after she had experienced an anaphylactic reaction.

We found that [Mother] suffered a severe reaction after an encounter with [Father] on October 13, 2021. On that date, [Father] came to a child's football practice during [Mother]'s custodial time. He gave the child a dartboard and repeatedly attempted to hand a dart to [Mother]. He then handed her a paper bag that she said had an overwhelming smell of citrus, and her throat began to swell up "within moments." She further described symptoms including wheezing and shortness of breath. [Mother] also described being in sudden fear. She testified that she wanted to get rid of the bag immediately but thought that [Father] would respond angrily based on her experience with him. She was forced to take Benadryl and use her EpiPen and had to stay overnight at the Hanover Hospital ICU for further treatment.

Additionally, [Father] has a history of providing items to the parties' children that have a strong scent and causing [Mother] to have an allergic reaction. This testimony from [Mother] was bolstered by testimony from her father, who described an incident where [Father] gave a guitar to one of the children that was oily and had a strong aroma. While there was no specific indication that the guitar was covered in citrus, [Mother]'s father was suspicious of the circumstances and removed the guitar from her presence.

. . .

However, even if [Father] did not give [Mother] an item that was actually laced with citrus, he certainly engaged in a course of conduct that placed her in reasonable fear of serious bodily injury and a risk of death. [Father] offered no evidence that [Mother] does not continue to be in fear of him nor any other evidence to support further modification allowing contact or early termination of the PFA. On previous instances, while the parties were still in a relationship, [Father] would leave citrus beverages spilled in their living room and filled their garage with alcoholic beverages containing citrus despite [Mother] frequently warning him of her allergy. Additionally, [Father] made threats to [Mother] specifically stating that "[i]t would be easy to kill you. All I have

- 2 -

to do is open an orange and nobody would ever believe it wasn't an accident," and "I would get your life insurance so easily, so don't do anything to upset me." [Father] also made previous threats to [Mother] that she "was going to suffer for what [she] put him through, and that [she] was going to wish she had never messed with him." Also, prior to their separation, [Father] physically assaulted [Mother] by pushing her and twisting her arm behind her back. He also previously took apart her EpiPens. After their separation, [Father] left citrus soap near [Mother]'s garage sink and car.

. . .

PFA Court Opinion, 10/11/22, at 2-7 (citations to record omitted) (footnote omitted).

Following the retrieval of evidence, including the paper bag, from the local police and laboratory testing and examination,[2] as well as an interview of Father, the criminal investigation closed due to lack of evidentiary support. *See* N.T., 8/8/22, at 15-16, 19. Thereafter, Father filed a petition to terminate/modify the final PFA order and request for discovery order on June 2, 2022. Father requested that the PFA be terminated or, in the alternative, modified "as [Mother's] claims of abuse have now been unfounded by after[-]acquired evidence." Petition to Amend PFA Order, 6/2/22. Father further sought authorization for discovery in order to subpoena the lab report and

---

[2] Reports were issued on November 5, 2021, and February 2, 2022. *See* N.T., 8/8/22, at 17-19. Notably, such reports were not admitted as evidence nor was testimony presented as to their contents. *See id.* at 16-17, 19-20.

investigation documents from the Pennsylvania State Police. *See id.* Mother filed an answer and motion to dismiss on June 15, 2022.[3]

On August 8, 2022, the court conducted a hearing on Father's petition to terminate/modify final PFA order. Father presented the testimony of Trooper David Petrosky, Pennsylvania State Police; Beverly Schuder; and Monica Vega.[4] He further testified on his own behalf.[5] Mother likewise testified on her own behalf.

At the conclusion of the hearing, the PFA court placed on the record its determination to deny Father's request for termination and to grant his request for modification to the extent mutually agreed. *See* N.T., 8/8/22, at 96-100. The court stated, "As such, [t]he [c]ourt will consider the mutual request by the parties that all communication occur through OurFamilyWizard. [Mother] may delegate her communications to a third party to avoid any direct communication with [Father,] since she does not want any direct communication with [Father] and is not willing to agree to the modifications

---

[3] While the PFA court initially denied Father's request for discovery, pursuant to order of July 5, 2022, the court granted his motion for reconsideration and authorized him to engage in discovery. *See* Order, 7/5/22.

[4] The separate issue of supervision of Father's custodial time and modification of the custody order was additionally before the court. Notably, Ms. Schuder and Ms. Vega, who were a family friend/former custody supervisor and girlfriend, respectively, and proposed by Father as future custody supervisors, testified related to this issue. *See* N.T., 8/8/22, at 52-69.

[5] Father additionally presented Defendant's Exhibits 1, 8, 9, 10, 11, 14, 15, 16, 17, and 18, which were admitted without objection. *See id.* at 92-93.

that he requested." *Id.* at 100. The court then entered an amended final PFA order on August 9, 2022.

On August 22, 2022, Father, through counsel, filed a timely notice of appeal. By order dated August 23, 2022, the PFA court directed Father to file a Rule 1925(b) concise statement of errors complained of on appeal within twenty-one days. Father complied and filed a concise statement on September 13, 2022. Thereafter, the PFA court filed a Rule 1925(a) opinion on October 11, 2022.

On appeal, Father raises the following issues for our review:

I. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in using an unprecedented case law standard for after[-]discovered evidence, [*i.e.,*] it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result, with regard to after[-]discovered evidence?

II. Whether the [t]rial [c]ourt erred as a matter of law in finding that the police lab report, dated November 5, 2021, was discoverable to [Father] prior to the final hearing on December 3, 2021, in that [Father] was unaware the report existed and the [t]rooper had informed [Father's] counsel that no information would be provided to [Father] until the investigation was complete, which did not occur until spring of 2022?

III. Whether the [t]rial [c]ourt committed an abuse of discretion and erred by making inconsistent rulings on the relevance and admissibility of evidence, in that the court prohibited revisiting [Mother's] entire original case despite the after[-]discovered evidence proved [Mother's] threshold claim at the original hearing, [*i.e.,*] being poisoned by [Father] via a bag containing citrus, to be false?

IV. Whether the [t]rial [c]ourt erred as a matter of law in interpreting 23 Pa.C.S.[A.] § [6117(a)] to mandatorily require the consent of both parties to modify or terminate a [PFA] order, in

that [Pa.R.C.P. No. 1901.8(c)] provides "either party" may seek a modification and affords the court the power to "enter an order granting or denying the petition following an appearance by the petitioner before the court?"

Father's Brief at 8.[6]

We review PFA orders with the goals of the PFA Act in mind:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse.

***K.B. v. Tinsley***, 208 A.3d 123, 127 (Pa. Super. 2019) (internal citations and quotation marks omitted); ***see also C.H.L. v. W.D.L.***, 214 A.3d 1272, 1276 (Pa. Super. 2019); ***Custer v. Cochran***, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*).

We begin with Father's third issue, as the resolution of this issue impacts all of Father's issues. Father asserts that the PFA court erred in not revisiting the original case as the after-discovered evidence disproved Mother's underlying claim that Father poisoned her with a bag containing citrus. ***See*** Father's Brief at 18. Father highlights the PFA court's focus on a course of conduct, and its failure to reconsider its finding that he gave Mother an item containing citrus, which was allegedly disproven by after-discovered evidence. ***See id.*** at 19. Looking to the purpose of the PFA Act, Father argues that the court's dismissal of the after-discovered evidence and focus on a course of

_____

[6] In his brief, Father withdrew two additional issues previously raised in his concise statement. Father's Brief at 9 n.1 & 2.

- 6 -

conduct improperly punishes him for past conduct. ***See id.*** at 20. He maintains:

> To accept the [t]rial [c]ourt's explanation that a course of conduct existing years prior to the filing of a [p]etition and not related to any conduct at the time the [p]etition was filed, would be to allow claims of abuse for every petitioner from years prior without any demonstration that there is a need for protection from future abuse. The finding equates to retroactive punishment of [Father] for alleged conduct he engaged in during his marriage and does not legitimately serve the purpose of protecting [Mother] from future abuse.

***Id.***[7]

In concluding that the after-discovered evidence would not have resulted in a different outcome, at the conclusion of the August 8th hearing, the PFA court focused on Father's course of conduct. ***See*** N.T., 8/8/22, at 98-99.

> The court stated:

> [Father] failed to show that the evidence is of such a nature and character that a different outcome is likely. Whether the results, which were not admitted into the record, showed that the actual -- that there was actual citrus on the items tested or not does not excuse the course of conduct and the reasonable belief that [Mother] expressed in credible evidence presented that [Father] had engaged in a course of conduct over a period of time which placed her in reasonable fear of bodily injury. . . .

---

[7] In passing, Father correctly notes that the primary goal of the PFA Act is not punitive, but the prevention of future abuse. ***See*** Appellant's Brief at 19-20. However, this observation does not mean the PFA could not consider Father's past conduct. ***See Mescanti v. Mescanti***, 956 A.2d 1017, 1023 (Pa. Super. 2008) (Holding that even though evidence did not support PFA court's finding about most recent incident of abuse, the PFA court's finding that a course of conduct established petitioner's reasonable fear of bodily injury).

Given his past conduct related to having citrus items where she could [be] exposed to them, coupled with his statements that it would be easy to kill you, all I have to do is open an orange and nobody would ever believe that this wasn't an accident while also joking about getting her life insurance so easily was enough to supporting [*sic*] finding of abuse.

After[-]discovered evidence, even if supported by [Father]'s contention that the item did not test positive for citrus in lab on a test conducted several weeks after the incident, it does not result in a different outcome. Therefore, [Father]'s request to reconsider the order and terminate early is denied.

***Id.***

The PFA court further stated:

We further note that, in order to prevail in his request, Appellant had to meet all four prongs of the test. [***See Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa. Super. 2010)] (holding that "[t]he test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted"). Not only did [Father] fail to meet his burden on the first prong, he failed to produce evidence to meet the balance of the test, as the trial court found that, even if the lab results were admissible and supported [Father]'s contention that citrus was not found on the item when tested, the trial court would not have entered a different result. [***See*** N.T., 8/8/2022,] at 98.

PFA Court Opinion, 10/11/22, at 11 (some brackets in original).

We can find no abuse of discretion in this conclusion. Father failed in meeting his burden of establishing that, had the lab results been presented at the original PFA hearing, the court would have denied Mother's request for a PFA order. Critically, the PFA court made clear its determination of abuse was not based on a finding that Father handed Mother a citrus tainted item at the football practice. Rather, the PFA court emphasized Father's course of conduct and its impact on Mother. ***See*** N.T., 12/3/21, at 43. The court stated, "We do

find that he has engaged in a course of conduct which places [Mother] in reasonable fear of imminent serious bodily injury given her allergy to citrus. . .. [H]is course of conduct is such that it can place her in fear of bodily injury. It is a reasonable fear given the historic nature of her condition that is known to [Father]." *Id.*; *see also* 23 Pa.C.S.A. § 6102(a)(2) (defining "abuse," in part, as: "Placing another in reasonable fear of imminent serious bodily injury" as between "family or household members, sexual or intimate partners or persons who share biological parenthood."). Hence, Father's third issue is without merit.

Turning to Father's first and second issues on appeal, he raises challenges related to the court's refusal to admit after-discovered evidence, including the standard used by the PFA court.[8] *See* Father's Brief at 13-20. To gain relief, Father must establish four circumstances:

> [Father] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

---

[8] While we note with disapproval procedural deficits with Father's brief, most notably the lack of a summary of argument, we decline to find waiver and proceed with the merits of Father's appeal as we perceive no prejudice. *See* Pa.R.A.P. 2111(a)(6) (providing that the appellant's brief shall contain a separate and distinct summary of the argument); *see also* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed. . ..").

The test is conjunctive; [Father] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa. Super. 2010) (internal citations omitted).

With his first issue Father contests the standard for after-discovered evidence utilized by the PFA court. Specifically, Father argues that the PFA court erred in using "an unprecedented case law standard for after[-]discovered evidence." ***See*** Father's Brief at 13.

In support of its use of the four-prong test for after-discovered evidence, the PFA court reasoned:

First, [Father] objected to the trial court's reliance on [***Rizk v. Barghoutt***, 2014 WL 10936780 (Pa. Super. April 14, 2014) (unpublished memorandum),] for its consideration of after-discovered evidence. While [Father] is correct that [***Rizk***] is an unpublished Superior Court opinion, its discussion of the four-prong test required for consideration of after-discovered evidence is supported by controlling authority from the Supreme Court of Pennsylvania. [***See Commonwealth v. McCracken***, 659 A.2d 541 (Pa. 1995); ***Commonwealth v. Dennis***, 715 A.2d 404, 415 (Pa. 1998)]. Further, we note that [Father] advocated for the use of the same test for after-discovered evidence in his Motion for Reconsideration filed June 27, 2022. Therefore, regardless of the case citation used during trial, the trial court correctly considered the four-prong test established in those cases. . . . As noted in the trial court's opinion, [Father] failed to meet the requirements.

PFA Court Opinion, 10/11/22, at 8-9 (citation to record omitted).

While Father admits that he referenced the same caselaw standard for after-discovered evidence in his pleadings, he contends that this was merely for illustrative purposes and suggests that this Court shape its own standard. ***See*** Father's Brief at 13-14. He states:

- 10 -

> The purpose of [Father]'s citation was to demonstrate to the trial court that other courts of equity had revisited the underlying questions of the case that impact the ultimate disposition upon the discovery of after-discovered evidence and, thus, the [t]rial [c]ourt had the authority to do so. It was not to advocate that the [c]ourt use the same standard to visit after-discovered evidence in a Protection from Abuse matter. [Father] is requesting that this Court fashion a standard, narrowly tailored to a Protection from Abuse action, which provides for the [t]rial [c]ourt to reexamine the facts with competent after-discovered evidence.

*Id.* at 14.

We agree with the PFA court. Regardless of citation, the well-settled standard for assessing after-discovered evidence was recognized and utilized by the PFA court. We see no reason to create a new test unique to the PFA arena. Further, as noted previously, it is clear that the PFA court would have granted Mother's PFA petition even if the results of the lab report had been admitted. Father's first claim fails.

Next, with his second issue, Father challenges the PFA court's determination as to the first prong of the after-discovered evidence test, that the results of the November 5, 2021 lab report were obtainable prior to the December 3, 2021 hearing. *See* Father's Brief at 14. Father asserts that he was unaware of any lab report prior to February 2022. *See id.* at 15, 17. He contends that it was "impossible" for him to know of and obtain the November 2021 lab report prior to the December 3, 2021 hearing. *See id.* at 16. He further indicates the impracticability of a subpoena and a request for a continuance. *See id.* at 16-17. Moreover, Father maintains that upon obtaining the after-discovered evidence, he "took immediate action" and filed the relevant petition. *See id.* at 17. Father, therefore, argues, "Father did not

fail the first prong of the test, rather the [t]rial [c]ourt appli[ed] 'due diligence' in the most unreasonable and impossible fashion, thereby committing an abuse of discretion and error of law." *Id.* at 17-18.

In rejecting Father's argument, the PFA court highlighted that Father had made no effort to obtain the lab results:

> [Father] next objects to the trial court's determination that he failed to establish that he was unable to obtain the police lab report prior to the hearing on December 3, 2021. As we noted above, the initial prong of the test for a court's consideration of after-discovered evidence is that the evidence could not have been obtained before the conclusion of the trial by reasonable diligence. As we found at the August 8, 2022[] hearing,
>
> > Testimony from the state trooper indicates that the evidence was picked up from West Manheim police three weeks after it was collected and taken to a lab for testing. An initial report was generated on November 5[], 2021, almost a month prior to the hearing. A subsequent examination of the evidence was conducted[,] and a report was generated in February of 2022.
> >
> > As a result of the testing, and after interviewing [Father], the criminal charges were dropped against [Father]. [Father] failed to show that he could not have obtained the results of the first test before the conclusion of trial on December 3[], 2021. No evidence was presented that [Father] engaged in reasonable diligence to procure the results. The fact that the trooper did not disclose the results to [Father] or his counsel is of no moment. It is the burden on [Father] to show that he could not obtain the evidence, therefore he fails the first prong of the test.
>
> [N.T., 8/8/22, at 97-98.] We again reiterate that there was no testimony provided by [Father] that he made any effort to obtain the results of the police lab report prior to the December 3, 2021, hearing. . . . We therefore appropriately found that he failed to meet the first prong of the after[-]discovered evidence test.

PFA Court Opinion, 10/11/22, at 9-10.

We cannot conclude this reasoning constituted an abuse of discretion. While Trooper Petrosky testified that the November 2021 report would not have been directly released, significantly, he testified that he was unaware if it was requested by Father:

> Q. So the question is regarding the report. Did [Father] through counsel request a copy of the report?
>
> A. I don't recall if it was requested or not but[,] as being part of an active investigation, that is not released directly to any parties.

N.T., 8/8/22, at 18-19. As such, despite knowing that the bag was retained by law enforcement and likely to be tested, there is no evidence of any requests or inquiries by Father. While the report would not have been released, there was no testimony that it was confidential and what information or status would have been available. While these circumstances are certainly not unambiguous on whether Father was diligent, we remind Father that it was his burden to establish that he was diligent. Therefore, the evidence of record was sufficient to support the PFA court's conclusion that Father was not diligent in obtaining the evidence from the lab report. And, as noted previously, even if the evidence had been presented, it would not have changed the result of the hearing.

Lastly, Father argues that the PFA court erred in construing 23 Pa.C.S.A. § 6117(a) as requiring the mutual consent of both parties for modification and/or termination of a PFA order. *See* Father's Brief at 21. He asserts:

> Because the [t]rial [c]ourt determined that a request for modification requires the mutual participation for the proper petition to modify a PFA Order, the court declined to consider any of [Father]'s requests to modify the petition, with the exception of changing limited communication provision to allow for the parties to communicate over a parenting application called Our Family Wizard, a request with which [Father] concurred. However, [the t]rial [c]ourt was incorrect in insisting that the statue applies over the language of the rule.

*Id.* Notably, Section 6117(a) provides, in part, "*The plaintiff and the defendant* may seek modification of an order issued under section 6108 (relating to relief) at any time during the pendency of an order. Except as otherwise indicated in this chapter, modification may be ordered after the filing of a petition for modification, service of the petition and a hearing on the petition." 23 Pa.C.S.A. § 6117(a) (emphasis added).

Father highlights the precedence of rules over statute and points to Pennsylvania Rule of Civil Procedure 1901.8(c), which allows for modification by either party. **See** Father's Brief at 22. Rule 1901.8(c) states, "If **either party** seeks a modification after a final judgment has been entered in a protection from abuse action, the party shall petition the court to modify the final order. The court shall enter an order granting or denying the petition following an appearance by the petitioner before the court." Pa.R.C.P. 1901.8(c) (emphasis added). The Explanatory Comment of 2013 further clarifies:

> Jurisdictions across the Commonwealth have adopted varying procedures and processes for the withdrawal, discontinuance and modification of protection from abuse actions. This rule provides a uniform process that comports with the requirements of 23 Pa.C.S.[A.] §§ 6107(b)(2) (related to hearings), 6117 (related to

- 14 -

procedure and other remedies) and [**Commonwealth v. Charnik**], 921 A.2d 1214 (Pa. Super. 2007). These requirements, when read together, require a different procedure for withdrawal, discontinuance and modification at various stages in a protection from abuse proceeding.

After a final protection order is entered, and no motion to reconsider or appeal is filed,[9] the court no longer retains jurisdiction to vacate that order. [**Charnik**], 921 A.2d at 1217. The court does, however, have jurisdiction to modify a protection from abuse order at any time after the filing of a petition for modification, service of the petition and a hearing on the petition. 23 Pa.C.S.[A.] § 6117. Thus, a party may request that the court modify the order to expire at an earlier date if the party does not want the order to remain in effect.

---

[9] Pennsylvania Rule of Civil Procedure 1930.2 states, in part:

    (a)    There shall be no motions for post-trial relief in any domestic relations matter, including Protection of Victims of Sexual Violence or Intimidation matters.

    *Note: See* Pa.R.C.P. No. 1957.

(b) A party aggrieved by the decision of the court may file a motion for reconsideration in accordance with Pa.R.A.P 1701(b)(3). If the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court.

    *Note:* Pennsylvania Rule of Appellate Procedure 903 states that the Notice of Appeal shall be filed within 30 days after the entry of the order from which the appeal is taken, except as otherwise set forth in that rule.

    . . .

Pa.R.C.P. 1930.2. Rule 1930.2(c) further provides that the trial court must enter its reconsidered decision within 120 days of the date on which the trial court grants reconsideration. Pa.R.C.P. 1930.2.

Pa.R.C.P. 1901.8, Explanatory Comment, 2013.

Moreover, Father maintains that Rule 1901.8(c) is supported by statutory law under 23 Pa.C.S.A. § 6108(d). **See** Father's Brief at 23. Section 6108(d) provides, "A protection order or approved consent agreement shall be for a fixed period of time not to exceed three years. The court may amend its order or agreement at any time upon subsequent petition filed by either party." 23 Pa.C.S.A. § 6108(d). Father argues, "Section 6108(d), read in light of [S]ection 6117(a), requires that before a court may amend a protection order or agreement a petition to amend must be filed by *either* party. Section 6108(d) thus requires that a party seeking to amend or dismiss a PFA order must file a formal written request specifically seeking either amendment or dismissal of the order." Father's Brief at 23 (internal quotation marks and citations omitted) (emphasis in original). Father therefore concludes that the PFA court's "strict application of the language of statute over the language as set forth in the rule was improper and resulted in an error of law ([*i.e.,*] the precluding of [Father]'s requested relief with which [Father] did not concur)." **Id.** at 24.

In support of its limited modification, the PFA court asserts that "a defendant to a PFA action is not entitled to unilaterally seek modification during the pendency of an order." PFA Court Opinion, 10/11/22, at 11. Referencing Rule 1901.8 and Section 6117(a), the PFA court recognized that an inconsistency exists between statute and rule as to modification of a PFA order. The court noted that Rule 1901.8 was enacted for purposes of

uniformity and found the reasoning in an unpublished Superior Court memorandum, **Castenada v. Castenada**, 2217 MDA 2013 (Pa. Super., filed July 24, 2014) (unpublished memorandum), persuasive. **See** PFA Court Opinion, 10/11/22, at 12-13. The court quoted, "The notion that a PFA defendant may petition to modify a final PFA order without the consent or participation of the victim, after a hearing and finding of abuse, is extremely troubling. Such a result would clearly favor the private interest of a PFA defendant over the public interest of abuse victims who seek protection through our courts." **Id.** (quoting **Castenada**, 2217 MDA 2013, at *35).

"[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 570 (Pa. Super. 2005) (citations and internal quotation marks omitted). As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary. **See  Allstate Life Ins. Co. v. Commonwealth**, 52 A.3d 1077, 1080 (Pa. 2012) (internal quotation marks and citation omitted).

When construing a statute:

[We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501-1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute

according to rules of grammar and according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*Cimino v. Valley Family Medicine*, 912 A.2d 851, 853 (Pa. Super. 2006) (citation omitted); *see also* 1 Pa.C.S.A. § 1921(b) (stating, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Under Section 1921(c), the court resorts to considerations of "purpose" and "object" of the legislature when the words of a statute are not explicit. *Sternlicht v. Sternlicht*, 876 A.2d 904, 909 (Pa. 2005) (referring to consideration of matters such as: (1) occasion and necessity for statute; (2) circumstances under which it was enacted; (3) mischief to be remedied; (4) object to be attained; (5) former law, if any, including other statutes upon same or similar subjects; (6) consequences of particular interpretation; (7) contemporaneous legislative history; (8) legislative and administrative interpretations of such statute). *Id.* at 909 n.9. Finally, "it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we . . . are permitted to examine the practical consequences of a particular interpretation." *Commonwealth v. Diakatos*, 708 A.2d 510, 512 (Pa. Super. 1998) (internal citations and quotation marks omitted).

Upon review, we first reject the PFA court's reliance on *Castenada*, an unpublished memorandum. *See* Superior Court Operating Procedure (OP) § 65.37(B) (stating, "Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, pursuant to Pa.R.A.P. 126(b). An

unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding. . . .");[10] *accord Oliver v. Irvello,* 165 A.3d 981, 984–85 (Pa. Super. 2017).

We recognize this Court's conclusion in *Stamus v. Dutcavich*, 938 A.2d 1098 (Pa. Super. 2007), upon interpretation of Section 6108(d) and Section 6117(a), that "before a court may amend a protection order or agreement a petition to amend must be filed by either party." *Stamus*, 938 A.2d at 1101 (emphasis omitted). Nonetheless, we save for another time the exploration of modification of a PFA order as set forth in the relevant statutes and rules and any tension therein. Notably, as the PFA court's reasoning makes clear, the after-discovered evidence would not have changed the outcome, as discussed previously. As such, the court did not abuse its discretion with its limited modification of the PFA order. Father's claim is therefore meritless.

---

[10] By way of definition, "For purposes of these operating procedures, 'non-precedential decision' refers to an unpublished, non-precedential, memorandum decision of the Superior Court filed after May 1, 2019. All references to a memorandum decision filed after May 1, 2019, within these operating procedures shall be analogous to 'non-precedential decision' for purposes of Pa.R.A.P. 126(b)." Superior Court OP § 65.37(B).

For the foregoing reasons, we affirm the PFA court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023